Booth, Judge,
delivered the opinion of the court:
The plaintiff is an Illinois corporation engaged in manufacturing what it designates as a food product. The Commissioner of Internal Eevenue levied and collect a manufacturer’s and a sales tax upon plaintiff’s business under the act of June 6, 1896. The manufacturer’s tax amounted to $100 per annum and the sales tax amounted to $490.73, extending over a period from March 1,1925, to March 14,1925, a total tax exaction of $890.73, and it is for the recovery of this amount, with interest thereon from date of payment, that this suit is brought. No jurisdictional .question is involved.
The act of June 6, 1896, 29 Stat. 253, is in terms as follows:
“ Be it enacted by the Senate a/nd House of Bepresenatives of the United Statees of America in Congress assembled. That for the purposes of this act, the word ‘ cheese ’ shall be understood to mean the food product known as cheese, and which is made from milk or cream and without the addition of butter, or any animal, vegetable, or other oils or fats foreign to such milk or cream, with or without additional coloring matter.
“ Sec. 2. That, for the purposes of the act certain substances and compounds shall be known and designated as ‘filled cheese,’ namely; All substances made of milk or skimmed milk, with the admixture of butter, animal oils or fats, vegetable or any other oils, or compounds foreign to such milk, and made in imitation or semblance of cheese.
“ Sec. 3. That special taxes are imposed as follows:
“Manufacturers of filled cheese shall pay four hundred dollars for each and every factory per annum. Every person, firm, or corporation who manufactures filled cheese for sale shall be deemed a manufacturer of filled cheese. * * *
*653 “ Sec. 6. That filled cheese shall be packed by the manufacturers in wooden packages only, not before used for that purpose, and marked, stamped, and branded with .the words ‘ filled cheese ’ in black-faced letters not less than two inches in length, in a circle in the center of the top and bottom of the cheese; and in black-faced letters of not less than two inches in length in line from the top to the bottom of the cheese, on the side in four places equidistant from each other; and the package containing such cheese shall be marked in the same maimer, and in the same number of places, and in the same description of letters as above provided for the marketing of the cheese; and all sales or consignments made by manufacturers! of filled cheese to wholesale dealers in filled cheese or to exporters of filled cheese shall be in original stamped packages. Retail dealers in filled cheese shall sell only from original stamped packages, and shall pack the filled cheese when sold in suitable wooden or paper packages, which shall be marked and branded in accordance with rules and regulations to be prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury. Every person who knowingly sells or offers to sell, or delivers or offers to deliver, filled cheese in any other form than in new wooden or paper packages, marked and branded as hereinbefore provided and as above described, or who packs in any package or packages filled cheese in any manner contrary to law, or who falsely brands any package or affixes a stamp on any package denoting a less amount of tax than that required by law, shall upon conviction thereof be fined for each and every offense not less than fifty dollars and not more than five hundred dollars or be imprisoned not less than thirty days! nor more than one year.
*******
“ Sec. 9. That upon all filled cheese which shall be manufactured there shall be assessed and collected a tax of one cent per pound, to be paid by the manufacturer thereof; and any fractional part of a pound in a package shall be taxed as a pound. The tax levied by this section shall be represented by coupon stamps; and the provisions of existing laws governing the engraving, issue, sale, accountability, effacement, and destruction of stamps relating to tobacco and snuff, as far as applicable, are hereby made to apply to stamps provided by this section.
****** *■
“ Sec. 11. That all filled cheese as herein defined imported from foreign countries shall, in addition to any import duty *654 imposed on the same, pay an internal-revenue tax of eight cents per pound, such tax to be represented by coupon stamps; and such imported filled cheese and the packages containing the same shall be stamped, marked, and branded, as in the case of filled cheese manufactured in the United States.
Hi H« # % * H* H<
“ Sec. 15. That the Commissioner of Internal He venue is authorized to have applied scientific tests, and to decide whether any substances used in the manuiacture of filled cheese contain ingredients deleterious to health. But in case of doubt or contest his decision in this class of cases may be appealed from to a board hereby constituted for the purpose, and composed of the Surgeon General of the Army, the Surgeon General of the Navy, and the Secretary of Agriculture, and the decision of this board shall be final in the premises.
*******
“ Sec. 18. That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall make all needful regulations for the carrying into effect the provisions of this act.”
The commissioner collected the taxes above mentioned by classifying plaintiff’s product as “ filled cheese ” under section 2 of the statute. Plaintiff is now insisting that in this respect the commissioner was in error, and asserts that its product is not within the meaning and intent of the statute in any event.
The statute defines cheese first by designating it as “the food product known as cheese ” and then by its ingredients, viz, “ Made from milk or cream and without the addition of butter, or any animal, vegetable, or other oils or fats foreign to such milk or cream, with or without additional coloring matter.” Obviously Congress by this procedure was referring to a known food product made by a process which utilized the natural ingredients of milk and cream, and eliminated the introduction of foreign ingredients in its composition. Section 2 manifestly takes up the identical subject and seeks to handicap its manufacture when the same resultant product is obtained by the use of foreign ingredients and the latter imitates the former. Clearly there can be little doubt that the mischief to be corrected by the statute was a *655 growing and expanding attempt to utilize skimmed inilk or milk from whicli the animal fats had been extracted and replace them by foreign fats or oils and produce a product capable of being marketed as cheese. Congress was attempting to preserve the pure-cheese industry and maintain its marketable stability by imposing a tax burden upon the cheaper commodity made by the employment of foreign substances, and which in competition with the natural product would materially supplant it in the trade. Much expert .testimony has been adduced, and a record of rather great pro.portions has been built up; but in reconciling conflicts and giving effects to its weight there is no doubt that the plaintiff’s product is made from casein, a by-product of skimmed milk, with which coconut oil is mixed for the express purpose of supplying the animal fats absent in skimmed milk. This, in our opinion, is the very thing the statute was seeking to tax. 'The language used could not make it plainer— “all substances made of milk or slummed milk, with the admixture of butter * * * or compounds foreign to such milk, and made n imitation or semblance of cheese.” Plain-, tiff’s product has the outward appearance and texture of soft cheese, and the fact is conceded that it is not made from the natural ingredients of milk or cream.
Plaintiff seeks to escape the tax upon the theory that casein is not milk or skimmed milk. This contention we regard as untenable. The vital ingredient, aside from animal fats, in whole milk or cream to cheese making is casein. If allowed to remain in the milk, as in pure cheese making, it surrounds the globules of butterfat, and when clotted furnishes the combined mass which is subsequently worked into the consistency of cheese. Milk from which the cream and casein have been extracted would be utterly worthless in cheese making. Therefore, plaintiff utilizes the cheese-making qualities of skimmed milk in so far as they are available •and supplies the deficiencies by the introduction of unnatural and foreign substances, creating a product of the texture and appearance of soft cheese. If the plaintiff purchased skimmed milk and produced its own casein, the result would be exactly the same. Plaintiff could not make its . product from skimmed milk alone. It is the casein in the milk, to *656 which is added the foreign fats or oils, that brings forth what plaintiff sells at present as a food product. Obviously this is doing indirectly what the statue intends to reach. Casein is nothing more nor less than skimmed-milk curd. It is true that plaintiff purchased casein from outside parties and did not extract it from its own skimmed milk; but clearly the distinction is one of form and not of substance. The only ingredient of skimmed milk available to plaintiff in its manufacturing process was casein, and it might just-as well have purchased its own skimmed milk directly and precipitated the casein therefrom. One may not escape a statutory provision by resorting to an outside source for the convenient and economical supply of an ingredient which, of itself, is the basic factor in a manufacturing process which the statute regulates and defines. Plaintiff uses skimmed milk to the very same extent it would have used the same if it had been impossible to purchase casein from others. Resort to purchasing casein was a mere convenience and doubtless cheaper than producing its own from skimmed milk.
Stress is put upon the contemporaneous condition of the cheese industry in 1896 when the statute was passed, and from the record a contention is made that the statute was intended to reach only imitations of hard or Cheddar cheese; that soft or cream cheese was practically unknown in 1896 and imitations of Cheddar cheese were influencing the foreign market and mailing serious inroads upon the domestic trade. The statute is not ambiguous. Its provisions are plain and the intent apparent. Section 2 defines “ filled cheese.” If plaintiff’s product falls within the definition the tax attaches, notwithstanding the fact that in 1896 similar products may not have been manufactured.
While we have given the plaintiff the benefit of Finding V, in our opinion the scope and plain intent of the act were to prevent imitations of natural cheese and save the public from purchasing imitations thereof, unless duly informed to that effect by proper brands and marking. To restrict the application of legislation of this character, legislation affecting the food supply to the narrow limits of form and *657 technical names applied to the industry in 1896 is, we believe,, without warrant of law. Congress was striking at. the perversion of the usual and natural processes of making pure cheese. Substitutes for the natural ingredients of milk and cream in the industry were the primary factors of its concern, both the practices then extant, or those which the future might develop.
The petition will be dismissed. It is so ordered.
Moss, Judge; Hat, Judge; and Campbell, Chief Justice, concur.
GRAham, Judge, took no part in the decision of this case..